## Wells et al., Executors, etc. v. Ipperson.

1. *Verdicts.*—A verdict may be delivered in writing or orally, but in neither form does it become the verdict until it is announced and received in court. Until then the jury may change it or authorize the judge

Wells v. Ipperson.

or clerk to change it in form or substance, and if, before it is received, the change intended is so announced by them and made in accordance therewith and recorded, the one so recorded is the only verdict in the case.

2. *Verdicts—Objections to Form.*—Objections to the form of the verdict can not be made for the first time in the Appellate Court.

3. *Instructions—Corrections in Form.*—The trial judge having read an instruction to the jury, was dissatisfied with it. He erased a part of it, and stated to the jury that he would read it again, and did so, omitting the part erased; *this was held* properly done.

Memorandum.—Action of assumpsit, use and occupation. Appeal from a judgment rendered by the Circuit Court of Adams County; the Hon. OSCAR P. BONNEY, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892, and affirmed. Opinion filed January 30, 1893.

## EXTRACT FROM THE ABSTRACT OF THE RECORD.

The jury brought into court a verdict in words and figure as follows:

We, the jury, find the claims of defendant balanced by those of the plaintiff. (Names of jurors.) Thereupon the court asked the jury if they meant to find as their verdict the issues for the defendant; to which the jury replied that they did. Whereupon the court put the verdict in form as follows:

We, the jury, find the issues for the defendant.

## APPELLANTS' BRIEF.

There being different issues before the jury, the verdict, "We, the jury, find the claims of defendant balanced by those of the plaintiff," was insufficient. Thompson on Trials, Vol. II, Sec. 2639; Jones v. Snedecor, 3 Mo. 390; Talbot v. Jones, 5 Mo. 217; Carr v. Stephenson, 5 Humph. (Tenn.) 559; Tibbs v. Brown, 2 Grant (Pa.), Col. 39; Powell v. Harter, 5 Ohio, 259; Anderson v. Anderson, 4 Hayw. (Tenn.) 255; Sublett v. McLin, 10 Humph. (Tenn.) 181.

The court erred in changing the verdict in matter of substance, or suggesting such change. 1 H. Bl. 78; Thompson

on Trials, Vol. II, Sec. 2633; McConnel v. Linton, 4 Watts (Pa.), 357.

The court erred in not sending the jury back to make a proper verdict. Flinn v. Barlow, 16 Ill. 39; Smith v. Williams, 22 Ill. 357; Martin v. Morelock, 32 Ill. 485; Reed v. Thayer, 9 Ind. 157; Bass v. Hanson, 9 Iowa, 563; Thompson on Trials, Vol. II, Sec. 2639-42; Acton v. Dooley, 16 Mo., p. 441, 449.

J. C. BROADY, attorney for appellants.

### APPELLEE'S BRIEF.

"It was immaterial what the written verdict contained, or what may have been its omissions or defects. The verdict of the jury was delivered orally in court by the foreman, in the presence and hearing of the other jurors. That verdict was in due form and judgment was properly rendered by the court upon it. The verdict as read by the clerk and rendered by the jury was their verdict and their only verdict." Griffin v. Larned, 111 Ill. 432.

The appellant made no objection to the action of the court below, he can not object now. By his silence he waived any error which there was in the court's conduct. Thompson on Trials, Sections 2, 700, 773; Chittenden v. Evans, 48 Ill. 52; Chicago, etc., Co. v. Goyette, 133 Ill. 21; State Bank of Illinois v. Batty, 4 Scam. 200; Wiggins Ferry Co. v. People, 101 Ill. 446; Schlenker v. Risley, 3 Scam. 483; Miller v. McManis, 57 Ill. 126; Burkett v. Bond, 12 Ill. 87; State v. Fenlason, 78 Me. 495; Dorr v. Waldron, 62 Ill. 221; Hartford Fire Ins. Co. v. City of Paris, 8 Brad. 181; Knowlton v. Fritz, 5 Brad. 217; Fireman's Ins. Co. v. Peck, 126 Ill. 493.

The supposed error was not among appellant's grounds for a new trial. He will be confined in the upper court to the reasons for a new trial specified in the court below, and will be conclusively held to have waived all causes for a new trial not there set forth in his written motion. Consolidated Coal Co. v. Schaefer, 135 Ill. 210; Utter v. Jaffry, 114 Ill. 470; Miller v. Ridgely, 19 Brad. 306; Roseboom

v. Whittaker, 132 Ill. 81; Hunter v. Harris, 29 Ill. App. 200; Hinckley v. Cheney, 31 Ill. App. 529; Beers v. Myers, 28 Ill. App. 648; Western Union Tel. Co. v. DeGolyer, 27 Ill. App. 489.

CARTER, GOVERT & PAPE, attorneys for appellee.

OPINION OF THE COURT, *the Hon. George W. Pleasants, Judge.*

This was an action of assumpsit, commenced by Edward Wells against appellee, on the 24th day of February, 1890, to recover $225, claimed as rent for one year from March 1, 1882, and interest thereon amounting to $81. Judgment was entered for defendant January 2, 1892, and plaintiff's appeal bond approved on the 29th. He died on the 16th of May next following, and letters testamentary were issued to appellants, who were thereupon, by order of this court, substituted as parties here.

The declaration consisted of two *indebitatus* counts, one for use and occupation, and the other on an account stated. Defendant pleaded the general issue, statute of limitations and set-off, and plaintiff replied to the second plea a new promise within five years before suit brought.

On the trial it appeared, without dispute, that defendant had occupied the premises as tenant of plaintiff for the year mentioned, and had paid nothing on account of the rent due for it; and also, that he had so occupied them for the five years next preceding, for which he had paid $225 per year, and that no new agreement was made with plaintiff for the one in question.

It further appeared that he had occupied them continuously from 1871; at first under Menke at $225, and afterward under Munson & Turner; that they opened a stone quarry on the demised premises, which deprived defendant of the use of nearly one-fourth of them, and that this condition continued during his tenancy under plaintiff. He claimed and testified that Munson & Turner, in consideration thereof, reduced the rent to $200, which was all he

paid them, and no new agreement was made with plaintiff. This statement of a reduction of their rent by Munson & Turner, was positively denied by Turner, who seems to have been the active member of the firm in this matter.

Defendant also claimed and testified that during his tenancy, plaintiff, for a consideration, gave him the rent of a house on that part of the land used for quarrying; that he rented it to one Doelle, who confirmed his statement; that Doelle occupied it for six weeks and paid him the rent, which plaintiff never claimed; that after Doelle left, plaintiff rented it to three families, who occupied it for eighteen months; that he, the defendant, received none of the rent from them, and that it was worth $6 per month. Plaintiff denied that he had turned over the rent to him, but did not deny that he rented to the three families referred to, and received the rent from them; and Doelle testified that he qalked with plaintiff about renting it in 1881, when it was empty, and that plaintiff told him he had had a heap of trouble with that house heretofore, and had turned it over to Mr. Ipperson.

Near the close of the year ending March 1, 1882, a notice was served on defendant to terminate his tenancy for non-payment of rent. He says he then had wheat in the ground and to save it, settled for what was claimed to be in arrear, at the rate of $225 per year, but then told plaintiff he had been paying $25 too much, and would deduct it from the rent for that year, to which plaintiff said nothing. This the latter denied, saying he had never heard it claimed that the rent was at any time less than $225.

Thus the plaintiff's demand, upon his pleading and proof, was one year's rent ($225) with interest at six per cent from March 1, 1883, amounting to $81—in all, $306, and that of defendant on his proof under the plea of set-off was $125 for overpayment, and $108 for rent of the house received by plaintiff to his use, making a principal sum of $233, a trifle in excess of that claimed by plaintiff.

We feel free to say that the evidence as it appears in the record does not impress us strongly in favor of this claim

for overpayment. Irrespective of the question as to the fact of overpayment, there was no proof of the averment of the plea that it was made through any mistake of fact, even on the part of plaintiff, and a tender of the amount really due and in arrear would have been as effectual as the payment of more demanded, to save his wheat and possession.

But there were other issues involved, on either of which a finding for the defendant would be decisive of the case. It is not pretended that there was evidence sufficient to warrant such a finding under the general issue. The controlling question, then, is upon the replication to the plea of the statute of limitations. Was there a new promise by defendant to pay the rent claimed, made to the plaintiff or his agent, within five years next before the commencement of the suit?

Mr. Turner was plaintiff's agent for the collection of his rent. About the 22d of April, 1889, he and Mr. Thompson, plaintiff's attorney, went together to see the defendant, who then lived near Mendon, to collect or secure the claim. They testified that Thompson presented to him the account in writing, for principal and interest as above stated, and that they both understood him to say "right out" that he owed that debt, and would pay it. Thompson says he wanted him to agree to pay it along in the fall, when he got his wheat off, but he, defendant, said no, he did not want to pay then or would not pay then, for he had use for his stuff; that he would not pay until the first of January, but on the first of January he would pay his debt. Thompson wrote a note in pencil for the amount, but defendant refused to sign it and said he would not give any note. Thompson did not understand him to say he would pay whatever he owed on the first of January. Turner says he said he "always expected to pay whatever was due," but that he agreed as to what was the amount due and promised to pay it on or before the first of January, though he refused to sign a note for it. Thompson said they had a bottle with them, and that they went in and ate dinner with him. Each of them also admitted they had an interest in the event of the suit,

for commissions and fees. Henry Ipperson, son of the defendant, then about twenty years of age, testified that he ate dinner at home that day, and that Thompson and Turner did not eat with them; that they did not eat dinner at all that day. He was not present at the conversation between them and his father.

Defendant's statement was as follows: "Last spring Mr. Turner and Mr. Thompson came to me. I was shelling seed corn in the wheat granary. Mr. Thompson got a paper out and wanted me to sign it. He said he came there to settle Mr. Wells' rent—something about that—I do not know what he said—or, he sent him to settle that matter, and he urged me to sign that paper. He said there was three hundred and some dollars, and he got pen and ink or lead pencil, and wanted me to sign it. I told him I would not sign that. I wanted to see just how we stand; that it was seven years ago that I was off the place, and I had forgot all about it, pretty near. Well, I told him I would pay Mr. Wells about New Years, what I owed him. I did not acknowledge I owed him $306 or $225. He footed it up, I guess; that is, him. That is all I know. That is the way he counted it at that time. That is all that occurred between Judge Thompson and me. My two little boys, one ten and the other thirteen years old, were in the granary at the time, and no one else other than Thompson, Turner and myself. I did not read the note he wanted me to sign. I guess the amount of the note was $306. I never said I would pay it on the first of January."

The above comprises all of the testimony bearing upon the question. That of either Thompson or Turner, if true, would show there was a new promise sufficient to take the claim out of the operation of the statute. That of defendant, if true, would show there was not. Other things being equal, two against one certainly make a preponderance. But to those who see and hear them other things are never or very seldom equal. In this case the verdict of the jurors who saw and heard them, as it appears in the record, is: " We, the jury, find the issues for the defendant."

The bill of exceptions shows, however, that they first offered the following: "We, the jury, find the claims of defendant balanced by those of the plaintiff," signed by all the jurors. This was not in proper form, even as a finding upon the issue of set-off alone. But if it was such in substance, it would seem to imply a finding for the plaintiff upon the others; for if his claim was barred by the statute or defeated under the general issue, there would have been none to balance that found for the defendant, and the verdict should have been for him for the amount so found. Yet the effect of finding for the defendant on that issue alone would be the same as such a finding upon all the issues —the judgment would be for the defendant. But this court might have found it more difficult to sustain such a finding than one upon the issue of a new promise; and, therefore, if the court dictated the change here, it was hurtful error. It appears from the bill that the court was not willing to receive the verdict first offered, and "asked the jury if they meant to find as their verdict the issues for the defendant, to which the jury replied that they did." Whereupon the court put the verdict in form as above stated: "We, the jury, find the issues for the defendant," and it was so recorded.

Counsel insist that this is not the verdict of the jury, because not shown to have been read or announced as corrected and assented to by them in open court after such reading or announcement; or, if it is, it was dictated or suggested by the leading question of the court, and so was fatally vitiated.

The verdict may be delivered in writing or orally; but in neither form does it become the verdict until it is announced and received in open court. Until then the jury may change it or authorize the judge or clerk to change it in form or substance; and if, before it is received, the change intended is so announced by them and made in accordance therewith and recorded, the one so recorded is the only verdict in the case. Griffin v. Larned, 111 Ill. 432; Lambert v. Borden, 10 Ill. App. 648, and cases there cited. If the change

made is in fact according to the intention so announced, we see no necessity for reading it to the jury as made, and getting their assent to it in open court.   In this case it is conceded and shown that the verdict as recorded was according to the intention of the jury, as announced in open court.   We are of opinion, therefore, that it is the verdict and the only verdict in the case.   The record is conclusive upon that question.

Whether it was improperly obtained in that form by the action of the court referred to, is quite another, which does not arise upon this record.   The bill of exceptions fails to show that any objection was made, or exception taken to this action; nor is it alluded to in the reasons stated for the motion to set aside the verdict and grant a new trial.   It can not properly be made the subject of complaint in this court for the first time.   Chittenden v. Evans, 48 Ill. 52; Fireman's Ins. Co. v. Peck, 126 Id. 493, where a long list of cases in this State is cited by the court.   Hall v. First National Bank, 133 Id. 243.

We think the verdict, as recorded, must therefore be held valid in law; and whatever may be thought of its support in the evidence as to the other issues, see no sufficient reason for disturbing it as to the one made on the replication to the plea of the statute of limitations.   Appellant's demand being barred by that statute, the judgment rendered would properly follow, unless for some other reason than an unwarranted finding upon the others.

The court, having read to the jury an instruction asked by plaintiff, and being dissatisfied with the last sentence, erased it and stated to the jury that he would read it to them again, which he did, omitting said sentence.   This is complained of.   We see in it no error or impropriety.   The instruction, as given, is not criticised.

Finding no material error in the record, the judgment will be affirmed.